**ATUFILI MAGEO of Pago Pago, Plaintiff**

**v.**

**TIMOTEO of Pago Pago, Defendant**

## No. 6-1959

## High Court of American Samoa

### Civil Jurisdiction, Trial Division

## May 6, 1959

Heard at Fagatogo on March 24, 1959 before MORROW, *Chief Judge*, and LETULIGASENOA and TAUALA, *Associate Judges.*

Atufili Mageo *pro se.*

Fesagaiga, Counsel for Timoteo.

OPINION OF THE COURT

MORROW, *Chief Judge.*

This is a petition for an order restraining the defendant from continuing the erection of a frame building in Pago Pago. The plaintiff Atufili Mageo alleges in his petition "That the Defendant is now erecting a frame building upon the communal family land of the Mageo Family without the knowledge and consent of the plaintiff and members of the plaintiff's clan to the Mageo family title."

At the hearing the plaintiff, although alleging in his sworn petition that the land on which the building was being erected was "the communal family land of the Mageo Family," nevertheless on the witness stand and while under oath to tell the truth testified that the land was the

communal property of the Veevalu title, and not the Mageo title. He also stated in his testimony that the Veevalu title was independent of the Mageo title.

As shown by the record of a deed of trust recorded in Vol. 1, Miscellaneous, pp. 160–162, the land involved was conveyed on February 16, 1906 by the then Mageo to "George Armstrong in trust for his infant son, Edward Armstrong, under the provisions of Section 8 of Regulation No. 4, 1900, of the Laws of the United States Naval Station, Tutuila, to make some provision for the maintenance and support of the said Edward Armstrong."

The undisputed evidence showed that the Mageo at the time of the execution of the deed of trust was Faataui.

■ Section 3, Regulation No. 4, 1900, provided that

"From and after the coming into force of this Regulation the alienation of native lands within the limits of the jurisdiction of the United States Naval Station, Tutuila, is prohibited."

The Regulation contained an exemption in Section 8, reading as follows:

"EXEMPTION

"8. This Regulation shall not apply to any native proprietor of land who desires to make provision for his son or daughter in view of legal marriage with a non-native or for his son or daughter already legally married to a non-native or for any of the issue of any such marriage, by grant or transfer of the land by instrument inter vivos or by will or deed mortis causa in favor of any trustee to hold in trust for the use of such son or daughter or such issue."

Mageo Faatuai had an adopted daughter Faanati who was also a blood member of the Mageo Family. She was married to George Armstrong and Edward was their infant son. The deed of trust recites that "One Edward Armstrong, an infant, is the son of Faanati (deceased) daughter of me the said Mageo and the wife of George Armstrong of Apia in Samoa." George Armstrong was a full-blooded white man and, therefore, a non-native.

The granting clauses and the habendum in the deed read as follows:

"I, the said Mageo, as settler, have granted, conveyed, and transferred, and by these presents do grant, convey, and transfer unto the said George Armstrong (hereinafter called the trustee) all that piece or parcel of land situate in Pago Pago and called or known as part of Autapini (here follows a description of the land conveyed) To hold the same unto the said trustee in fee simple to the use of the said Edward Armstrong and his heirs."

The Court takes judicial notice of the fact that the United States Naval Station by the order of President McKinley dated February 19, 1900, included the Island of Tutuila. Therefore, Regulation No. 4 was applicable to the land involved, it being native land, the communal land of the Mageo title in Pago Pago.

We think that in Section 8 above quoted "issue of any such marriage" means the children of the marriage; that "issue" as commonly used means children. "Issue, in common parlance, and as used generally by the community, signifies immediate descendants—children." *Moore v. Moore*, 12 B.Mon. (Ky.) 651, 655 (quoting *Newcomb v. Newcomb* (Ky.), 248 S.W. 198, 200). True, "issue" has been construed in some cases to include all lineal descendants. 33 Corpus Juris 820. However, "In the ordinary parlance of laymen, 'issue' means children, and only children." Id. But it is immaterial in this case whether we construe "issue" as limited to children or as limited to "lineal descendants" because Edward Armstrong died, having no lineal descendants.

In view of the prohibition against alienation of native lands contained in Section 3 of Regulation No. 4 above quoted and the exemption in Section 8, the greatest estate that Mageo could lawfully convey to George Armstrong for the use of his son Edward was an estate terminating upon the death of Edward. Support and maintenance can

be provided only for a living person, not a dead person. And even if we should construe "issue of the marriage" in Section 8 to include lineal descendants, while the estate conveyed would then have been a determinable fee, it would make no difference in the decision of this case since Edward had no lineal descendants.

■ Although Mageo did by his deed of trust attempt to convey a use in fee simple (the habendum clause in the deed of trust reads "to the use of the said Edward Armstrong and his heirs"), we think in view of Sections 3 and 8 of the Regulation that he could not convey a fee simple but that the greatest estate he could convey was, as above stated, an estate terminable upon the death of Edward, thereby leaving a reversion in the grantor. A reversion or estate in reversion is "the residue of an estate left by operation of law in the grantor or his heirs, or in the heirs of a testator, commencing in possession on the determination of a particular estate granted or devised." Black's Law Dictionary (4th Ed.) under "Reversion, or Estate in Reversion." As we construe the Regulation and the deed, the land reverted to the Mageo title upon the death of Edward. Upon the death of Edward, therefore, the grantor Mageo or his successor as the matai had a fee simple estate in and the right of immediate possession to the land in question.

Just when Edward died is not certain from the evidence, but that he was dead in 1925 is certain.

The Mageo who executed the deed of trust, as we have said, was Mageo Faataui. He resigned from the Mageo title in favor of Kini who, as it appears from the matai name register, was registered as the Mageo on October 30, 1906. On the same day the holder of the Veevalu title was registered.

The evidence established that after Faataui resigned from the Mageo title he became the first Veevalu, although Faataui's given name is not set out in the register. Faataui

had some children and grandchildren who now call themselves the Veevalu Family, some of whom, including the plaintiff, claim that the land involved is Veevalu communal family land and not Mageo land.

■ Veevalu is a Tongan title. Faataui took that title upon his resignation from the Mageo title. The Veevalu title is recognized by the Village Council of Pago Pago as a lesser matai title in the Mageo Family. The Veevalu could not sit in the village council upon the strength of his Tongan title. It was necessary for him to come into the council under some Pago Pago title. We are convinced from the evidence that he did so come in and that it was done under the authority of the Mageo title and that by so doing he became a lesser matai in the Mageo Family.

It was clear from the evidence that ever since 1925, and possibly for some time prior thereto, the land conveyed by Mageo Faataui to George Armstrong, in trust for the support of Edward, has been in the possession either of members of the Mageo Family or people who, if not actual members of the Mageo Family, occupied it by permission of Mageo Family members or of the matai himself. The lineal descendants of Mageo Faataui have occupied parts of it during part of the time and all of it during the remainder of the time ever since 1925, and because Mageo Faataui, after resigning from the Mageo title, took the Tongan title Veevalu, they have called themselves the Veevalu Family. However, all of them are members of the Mageo Family since they have Mageo blood in their veins, being descendants of Mageo Faataui, the grantor in the trust deed. The Atufili title is a lesser title in the Mageo Family and that title was given by the present Mageo to the plaintiff, Atufili Mageo.

■ We think, in the light of the evidence, that the claim by the plaintiff that the Veevalu branch of the Mageo Family acquired title to the land involved through adverse pos-

session against the remainder of the Mageo Family, to whose matai the land reverted in fee simple upon the death of Edward Armstrong, is without foundation. We believe from the evidence that any occupancy of the land by members of the Veevalu branch was through their membership in the Mageo Family and that view of the evidence is fully supported by plaintiff Atufili Mageo's allegation under oath in his petition "That the defendant is now erecting a frame building upon *the communal family land of the Mageo Family* (emphasis added) without the knowledge and consent of the plaintiff and members of the plaintiff's clan to the Mageo Family title."

The evidence established that Mageo Maaele, the present matai of the Mageo Family, assigned the land on which defendant Timoteo, who is a blood-member of the Mageo Family, is erecting his house to Timoteo for that purpose. Such house is the frame building referred to in the plaintiff's petition.

In view of the fact that we find that the land involved is the communal family land of the Mageo title, it having reverted to the Mageo upon the death of Edward Armstrong, and that the matai of the Mageo Family has assigned such land in accordance with Samoan custom to defendant Timoteo, a blood-member of the Mageo Family, for the erection of his house thereon, it follows that the plaintiff's petition should be dismissed.

### ORDER OF DISMISSAL

Accordingly, it is ORDERED that the plaintiff's petition be and the same is hereby dismissed.

Costs in the sum of $23.00 are hereby assessed against Atufili Mageo, the same to be paid within 30 days.